**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kristina V., | No. CV-24-01266-PHX-SHD |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Claimant Kristina V. ("Claimant")[1] seeks review of the Social Security Administration Commissioner's ("Commissioner") final decision denying her disability insurance benefits. For the reasons set forth below, the Administrative Law Judge's ("ALJ") decision is **affirmed**.

I.   **BACKGROUND**

Claimant filed applications for disability insurance benefits on January 27, 2021 under Titles II and XVI. (Administrative Record ("AR") 11.) After a hearing, the ALJ denied Claimant's claim on June 14, 2023. (AR 8.) The ALJ determined Claimant had the severe impairments of non-epileptic seizures (frequently referred to in the medical records as "pseudoseizures"), other cerebral degenerations, and a neurocognitive disorder. (AR 14.) The ALJ evaluated the medical evidence and testimony, and concluded that Claimant was not disabled. (AR 20–21.) In doing so, the ALJ determined that Claimant had the Residual Functional Capacity ("RFC") to perform "a full range of work at all

---

[1]   As a matter of practice, Claimant is referred to as such and, at most, by her first name and last initial to protect her privacy.

exertional levels" with the following non-exertional limitations:

> [S]he can never climb ladders, ropes or scaffolds and can have no exposure to unprotected heights or moving mechanical parts. She can perform simple, routine tasks. She can interact with supervisors, coworkers, and the public occasionally. She can make simple work-related decisions. She can tolerate occasional changes in a routine work setting.

(AR 16–17.)

Based on the RFC formulation and the testimony of the vocational expert at the hearing, the ALJ found that Claimant could perform past relevant work, including "office helper type work," and found in the alternative that she could perform other occupations such as "housekeeper, cleaner," "assembler," and "nut bolt assembler." (AR 19–20.) The ALJ thus denied Claimant's claim. (AR 20–21.)

The Appeals Council denied Claimant's request for review on March 28, 2024. (AR 1.) Claimant then appealed to this Court. (Doc. 1.)

## II. LEGAL STANDARD

Only those issues raised by the party challenging the decision are reviewed. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Commissioner's disability determination may be set aside only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance" of evidence and is such that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). To determine whether substantial evidence supports a decision, the record must be considered as a whole. *Id.* But if "the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

To determine whether a claimant is disabled for purposes of the Act, an ALJ must follow a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett*

*v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  For purposes of this appeal, only steps four and five are relevant.  At step four, the ALJ assesses the claimant's RFC—the most the claimant can do with their impairments—and determines whether the claimant is still capable of performing past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If so, the claimant is not disabled, and the inquiry ends.  *Id.*  If not, the ALJ proceeds to the fifth and final step, where he or she determines whether the claimant can perform any other work that exists in "significant numbers in the national economy" based on the claimant's RFC, age, education, and work experience.  *Id.* § 404.1520(a)(4)(v); *Tackett*, 180 F.3d at 1099.  If so, the claimant is not disabled.  *Tackett*, 180 F.3d at 1099.

## III.     DISCUSSION

Claimant asserts three arguments on appeal that will be addressed in order: (1) the ALJ's RFC finding was not supported by substantial evidence; (2) the ALJ erred in his analysis of Dr. Garrett's opinion; and (3) the ALJ failed to pose a complete hypothetical question to the vocational expert.  (Doc. 10 at 2.)

### A.     The RFC Finding

Claimant first challenges the RFC because it did not include limitations addressing the ALJ's statement that Claimant "occasionally needed redirection and [had] tangential thoughts."  (Doc. 10 at 7 (quoting AR 19).)  In making this statement, the ALJ was summarizing the opinion of the state agency medical consultant, George W. Stern, Ph.D, which the ALJ found persuasive.  (AR 19.)  Dr. Stern's opinion regarding Claimant's occasional need for redirection and tangential thoughts, in turn, was based on his review of medical records from her primary care provider.  (AR 107–08, 133; *see also* AR 619 (Ridgeway records).)  Importantly, after reviewing all of the medical evidence, Dr. Stern concluded that Claimant's stated "limitations are not totally consistent with the objective medical evidence," (AR 109, 134), and that she was not significantly limited in her ability to "carry out very short and simple instructions," "make simple work-related decisions," or engage in other activity, (AR 114–16, 139–41).  He also noted the records reflect that Claimant "is very vested in appearing severely ill."  (AR 107–08, 133; *see also* AR 619.)

After evaluating the entire medical record, the ALJ found Dr. Stern's overall opinion persuasive and incorporated various non-exertional limitations Dr. Stern identified in the RFC, including that Claimant can only "perform simple, routine tasks" and "make simple work-related decisions." (AR 16–17.) These limitations effectively addressed Claimant's tangential thoughts and occasional need for redirection. (AR 16–17.) Accordingly, Claimant's first argument fails.

Claimant also argues that the RFC only included "seizure *precautions* . . . but made no accommodations for a worker who would actually *have* seizures in the workplace." (Doc. 10 at 7.) This appears to be a distinction without a difference. The ALJ evaluated the medical records and Claimant's testimony, determined it was possible that she may suffer seizures while at work, and included limitations in the RFC to address those seizures. (AR 16–19.) Claimant does not identify any additional limitations the ALJ should have imposed based on her seizures, and instead only vaguely argues that the limitations in the RFC are insufficient. (Doc. 10 at 7–8.) This vague argument fails. *Cf. Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to consider argument that was raised without any specificity).

Although Claimant does not specifically assert that the ALJ improperly discounted her symptoms testimony, she appears to argue that the ALJ's RFC formulation does not account for her testimony regarding the frequency and severity of her seizures. (Doc. 10 at 8.) Arguments not raised in an opening brief are waived. *Cf. Avenetti v. Barnhart*, 456 F.3d 1122, 1125 (9th Cir. 2006) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived." (citation omitted)). But even if she had not waived this argument, it fails.

If an ALJ finds that a claimant "presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and that there is nothing to suggest malingering, the ALJ may "reject the claimant's testimony about the severity of [his or] her symptoms only by offering specific, clear and convincing reasons for doing so." *Revels v. Berryhill*, 874 F.3d 648,

655 (9th Cir. 2017) (citation omitted). An ALJ, however, is not required to "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

Here, the ALJ rejected Claimant's "statements concerning the intensity, persistence and limiting effects" of her seizures because they were "not entirely consistent with the medical evidence and other evidence in the record." (AR 17.) The ALJ explained in detail why Claimant's symptom testimony was not consistent with her medical records, noting, among other things, that "her seizures had been well controlled" and her anxiety reduced with the aid of medications, (AR 17 (citing AR 556)), she had refused other treatments and medications and was "emotionally invested with her role as a dependent victim," (AR 17–18 (citing AR 620)), her pseudoseizures could be controlled if she remained calm and maintained a calm environment, (AR 18 (citing AR 921)), and she reported a reduction in her seizures and that her medication regimen was optimal to control her seizures, (AR 18 (citing AR 993)). Based on this analysis, the ALJ concluded that Claimant can do "a full range of activities of daily living when she does not have seizures," "she has responded well to medication and does have periods when there is a reduction in her nonepileptic seizures," and the seizures "can be controlled if she keeps calm and controls her environment." (AR 18.)

The ALJ provided specific, clear, and convincing reasons based on the record to properly reject Claimant's symptom testimony. Additional evidence in the record further supports the ALJ's conclusion. (AR 113 (describing broad range of activities of daily living); AR 289–92, 309–12 (same); AR 531 (same); AR 575 ("her seizures are under fairly good control dispute having occasional myoclonus that is nondisabling"); AR 594 ("Patient denies seizures or myoclonic jerks."); AR 817 ("Client reports she is not interested in additional psychiatric medications to manage symptoms of depression and anxiety associated with seizures.").) Accordingly, the ALJ did not err in discounting Claimant's symptom testimony.

Finally, Claimant asserts that the ALJ's finding that Claimant's seizures can be

"controlled if she keeps calm and controls her environment" contradicts the RFC because an employee cannot control their environment. (Doc. 10 at 7–8.) The RFC, however, is consistent with this finding because it expressly included a limitation that Claimant can only tolerate "occasional changes in a routine work setting" to mitigate the risks of seizures. (AR 18.) Accordingly, the ALJ did not err in formulating the RFC.

### B.     Dr. Garrett's Opinion

Claimant attended a neuropsychiatric consultation with Robin Garrett, Psy.D., during which Dr. Garrett performed testing to assess Claimant's cognitive performance and made comparisons to similar testing undertaken in 2006. (AR 924–31.) The ALJ found Dr. Garrett's report concerning Claimant's impairments partially persuasive, including findings that Claimant suffers "memory issues and [a] mood disturbance," "has slower processing speed and has a history of learning difficulties," "has had difficulties with word finding and slow thoughts," and her "IQs were in the low average range." (AR 19.)

The ALJ did not, however, identify which parts of Dr. Garrett's opinion he found unpersuasive, nor did he explain why any part of that opinion was unpersuasive. (*Id.*) Claimant thus argues that the ALJ failed to adequately analyze Dr. Garrett's opinion under Social Security Ruling (SSR) 96-8p, which states in pertinent part: "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudication must explain why the opinion was not adopted." (Doc. 10 at 10.)

The Commissioner responds by arguing that the ALJ was not required to evaluate Dr. Garrett's report under SSR 96-8p because it was not a "medical opinion" as that term is defined in the pertinent regulations. (Doc. 12 at 6.) Those regulations state in relevant part: "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [their] impairment(s) and whether [a claimant has] one or more impairment-related limitations or restrictions in [work-related] abilities." 20 C.F.R. §§ 416.931(a)(2) and 404.1513(a)(2).

The Court need not address the merits of the Commissioner's argument because

Claimant effectively concedes this point, both by failing to file a reply brief challenging the Commissioner's argument—which the Court deems a concession—and by essentially admitting that Dr. Garrett did not render opinions concerning Claimant's ability to function in a vocational setting. (Doc. 10 at 10 ("*[I]f this opinion were applied to a vocational setting*, it would *seem* to indicate that [Claimant] would require additional reminders or help remembering work duties and workplace procedures." (emphasis added)).)

In any event, even if all or a portion of Dr. Garrett's report constitutes a medical opinion, *see Rodin v. Comm'r of Soc. Sec.*, 2023 WL 3293423, at *14 (E.D. Cal. 2023) (explaining that courts "do not take an all-or-nothing approach" in determining whether a medical report constitutes a medical opinion), the ALJ's analysis complies with SSR 96-8p. The RFC assessment both considered Dr. Garrett's report and incorporated limitations that are consistent with that report, including that Claimant can only perform "simple, routine tasks," only make "simple work-related decisions," and "can tolerate occasional changes in a routine work setting." (AR 17.) Because the RFC does not actually conflict with Dr. Garrett's report, the ALJ did not need to provide further explanation. *See* SSR 96-8p (explanation only required when "the RFC assessment conflicts with an opinion from a medical source"). The ALJ therefore did not err with respect to his consideration of Dr. Garrett's report.

### C. Hypothetical Question to Vocational Expert

Claimant's final argument is that the ALJ erred by asking the vocational expert a hypothetical question that did not include the RFC's limitation that Claimant can only make "simple work-related decisions." (Doc. 10 at 11.) Specifically, the ALJ asked the following question:

> We're going to start with the claimant can never climb ladders, ropes, or scaffolds; and no exposure to workplace hazards such as unprotected heights or moving mechanical parts and then can perform simple and routine tasks; can tolerate occasional changes in a routine work setting; could interact occasionally with supervisors, coworkers, and the public; can she perform

past work?

(AR 63–64.)

The legal inquiry into the adequacy of a hypothetical question "hinges on the nature of the ALJ's questions." *Leach v. Kijakazi*, 70 F.4th 1251, 1254–55 (9th Cir. 2023). If the ALJ's question "<u>inaccurately</u> describes the claimant's true limitations," the "expert's testimony has no evidentiary value" and "cannot constitute substantial evidence to support the ALJ's findings." *Id.* at 1255 (citations and quotation marks omitted). In those situations, courts can only affirm "if the ALJ's failure to include all of the claimant's limitations was harmless," meaning that the error was "inconsequential to the ultimate nondisability determination." *Id.* (citations and quotation marks omitted). On the other hand, "when the ALJ's question to a vocational expert <u>accurately</u> describes the claimant's limitations . . . an ALJ ordinarily may rely on the expert's testimony" with certain exceptions (that are not pertinent here). *Id.*

Relying on *Leach*, the Commissioner argues that although the ALJ omitted the limitation regarding "simple work-related decisions," any error was harmless because the only jobs the vocational expert testified about were unskilled, and thus adequately incorporated this limitation. (Doc. 12 at 8–9.) In that case, the ALJ omitted RFC limitations in the hypothetical question posed to the vocational expert, including that the claimant was restricted to work requiring "little or no judgment" and could only "follow short, simple instructions." *Leach*, 70 F.4th at 1255. With respect to the omission of the "little or no judgment" limitation, *Leach* concluded that the error was harmless because the vocational expert identified three jobs that were "unskilled," which is defined as "work which needs little or no judgment" under 20 C.F.R. § 404.1568(a). *Id.* at 1256 ("[E]ven though the ALJ's question did not limit the vocational expert's answer to jobs that require little or no judgment, the vocational expert identified only jobs with that limitation. In this circumstance, the error was harmless."). With respect to the omission of the "short, simple instructions" limitation, however, the court reversed, explaining that the error was not harmless because the jobs identified by the vocational expert could include lengthy—rather

- 8 -

than short—instructions. *Id.* at 1256–57.

In this case, the ALJ's omission of the "simple work-related decisions" limitation is more akin to the omission of the "little or no judgment" limitation in *Leach* than the omission of the "short, simple instructions" limitation in that case. At the hearing and in response to the ALJ's hypothetical question, the vocational expert identified one prior unskilled job held by Claimant, office helper (DOT code 239.567-1010), (AR 63), as well as three unskilled jobs available in the national economy: (1) housekeeper/cleaner (DOT code 323.687-014); (2) assembler position (DOT code 706.687-010); and (3) nut and bolt assembler (DOT code 929.587-010), (AR 64). Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a).[2] The omission of the "simple work-related decisions" limitation from the hypothetical, therefore, was inconsequential to the ALJ's nondisability determination in this case and harmless. *See Leach*, 70 F.4th at 1256.

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed.**

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment consistent with this Order and close this case.

Dated this 14th day of August, 2025.

Honorable Sharad H. Desai
United States District Judge

---

[2] Moreover, two of the unskilled jobs identified have a "reasoning" level of one, meaning that the worker must only "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and only "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *See* Dictionary of Occupational Titles, § 323.687-014, 1991 WL 672783 (housekeeper/cleaner); *id.* § 929.587-010, 1991 WL 688159 (nut and bolt assembler).